UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TYANNE FONZA as next friend of T.G., a minor,<br><br>Plaintiff,<br><br>v.<br><br>CHICAGO PUBLIC SCHOOLS DISTRICT #299, KIPP CHICAGO SCHOOLS, ELLEN DAVIS-BHATTACHARYYA, TESSA CATLETT, MICHAEL ELLIOTT, and CORRINNE HALL,<br><br>Defendants. | No. 17-CV-3571<br><br>Judge Joan B. Gottschall |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Tyanne Fonza, as next friend of her daughter T.G. (born in 2005[1]), has sued the Chicago Public Schools District #299 and other defendants for failure to provide medical care and for permitting T.G. to play on unsafe playground equipment. These claims arise from an injury T.G. sustained while playing during recess on the playground at KIPP Ascend Primary School ("KIPP Ascend") on May 18, 2016, when T.G. was a student. Fonza pleads three 42 U.S.C. §1983 claims and one pendent state law claim that commingles negligence and willful and wanton theories of conduct. *See* Compl. ¶¶ 31–59, ECF No. 1. Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted.

The complaint itself is difficult to understand, since each count incorporates all prior allegations and plaintiff in her briefing switches from what each count appears to allege to other

---

[1] The complaint gives T.G.'s exact date of birth in paragraph four. Only the year of an individual's birth may be included in a public filing. Fed. R. Civ. P. 5.2(a)(2). At the court's direction, the clerk has restricted public access to the complaint temporarily. Plaintiff is directed to file, within seven days after the entry of this order, a redacted complaint that complies with Federal Rule of Civil Procedure 5.2.

theories based on allegations made outside that specific count. To make matters worse, defendants' motion to dismiss tries to guess at plaintiff's theories, leading plaintiff in her response brief to argue that defendants have it wrong and, by failing to address the issues plaintiff intended to raise, waived their ability to respond to those issues. Plaintiff does not appear to appreciate how much damage the cases she cites in her briefing do to her theories. The briefs are at best marginally helpful. That said, a few issues can be addressed, but whether the court has any better purchase on what plaintiff is trying to allege than defendants do is unclear. With those caveats, the court grants the motion to dismiss in part and denies it in part based on the following analysis.

## I. RULE 12(b)(6) STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When deciding a Rule 12(b)(6) motion, the court must "construe the complaint in the 'light most favorable to the' plaintiff." *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)). The court also assumes that all of the well-pleaded facts in the complaint are true and draws reasonable inferences in the plaintiff's favor. *See Iqbal*, 556 U.S. at 678; *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017) (citing *McCauley v. City of Chicago*, 671 F.3d 611,

---

[2] Defendants also seek a more definite statement of the claim alleged in Count IV. *See* Fed. R. Civ. P. 12(e). That issue is discussed in the text of Part III.D.

615–16 (7th Cir. 2011)); *Tagami v. City of Chicago*, 875 F.3d 375, 877 (7th Cir. 2017) (citing *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016)).

## II. FACTUAL ALLEGATIONS

The facts alleged are straightforward, and as just explained, the court accepts them as true for purposes of deciding the pending motion. KIPP Chicago Schools ("KIPP") operates KIPP Ascend which is part of Chicago Public Schools District #299. Compl. ¶ 5. The four named individual defendants occupied the following roles at KIPP Ascend on May 18, 2016: Ellen Davis-Bhattacharyya was the principal; Tessa Catlett was an assistant principal; Michael Elliott was T.G.'s teacher; and Corinne Hall (referred to as Ashley Hall in plaintiff's brief in opposition to the motion to dismiss) was a hall monitor. Compl. ¶¶ 7–10.

On May 18, 2016, at approximately 8:30 a.m., Elliott took his class, including T.G., for recess. Compl. ¶ 12. During recess, T.G. fell from the school's monkey bars and injured herself on a seesaw located beneath the monkey bars. Compl. ¶¶ 14–15. T.G.'s teacher, defendant Elliott, took T.G. to the office of defendants Catlett and Davis-Bhattacharyya, to be examined. Compl. ¶ 18. No school nurse or trained medical staff was present in the building. Compl. ¶ 19. Elliott, Davis-Bhattacharyya, Hall, and Catlett failed to call 911 or an ambulance. Compl. ¶ 20. It is alleged that Davis-Bhattacharyya and Catlett did not want to call an ambulance because it would cause the school to incur a fee.[3] Compl. ¶ 21. Instead, Elliott called Fonza between 9 and 10 a.m. Compl. ¶ 22. It is not clear if he did so on his own initiative or pursuant to another defendant's directive. *See* Compl. ¶¶ 21–22. Fonza arrived at KIPP at approximately 11:20 a.m.

---

[3] Plaintiff's brief in opposition to the motion to dismiss says that "it was KIPP's practice not to call for medical assistance," ECF No. 33 at 2, but plaintiff's complaint does not so allege. The court nonetheless considers these statements because they supplement the allegations in the complaint and are consistent with it. *See Anzaldua v. Chicago Transit Auth.*, No. 02 C 2902, 2002 WL 31557622, at *2 (N.D. Ill. Nov. 15, 2002) (stating court "will consider additional information in a responsive brief to a motion to dismiss to the extent that it is supplemental and consistent with the complaint and clarifies the information in the complaint" (citations omitted)).

and found T.G. alone in the hallway, without any adult supervision, her eyes swollen from crying, bleeding from the vaginal area through her clothes and in excruciating pain. Compl. ¶¶ 17, 24, 25. Up to that time, "no school employee [had] called for medical assistance or . . . rendered any medical aid to T.G.." Compl. ¶ 24. "[O]bserving T.G.'s pants covered in blood[,] Fonza called an ambulance," Compl. ¶ 25, which, at about 11:45 a.m., took T.G. to Mount Sinai Medical Center, Compl. ¶ 26. T.G. was examined by Dr. Richard Trester, who performed surgery to repair a sub-clitoral laceration. Compl. ¶ 27. "On May 23, 2016, a second surgery was performed . . . by Dr. Nuzhath Hussain at the University of Illinois Hospital and Health Sciences System to drain a hematoma which had developed on [T.G.'s] labia minora." Compl. ¶ 28. T.G. missed several weeks of school, endured pain and suffering and incurred medical expenses as a result of this incident. Compl. ¶ 29.

### III. ANALYSIS

The court analyzes defendants' arguments in the order they appear in their motion. Plaintiff has abandoned her arguments for imposing *Monell* liability on her § 1983 claims. As for those claims, though several theories plaintiff advances fail, the complaint alleges a state-created danger claim but not on the theory pleaded. Defendants have not adequately developed their qualified immunity arguments. Finally, the court considers a number of attacks on plaintiff's state law claim, finding principally that defendants, at this stage, have not established that the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-201, bars the claim.

**A. *Monell* Liability of KIPP and the Board of Education**

Two defendants first argue that plaintiff has failed to allege a sufficient basis for imposing *Monell* liability for the § 1983 claims against them. That is, they argue that nothing is alleged that could be construed as a policy or practice officially adopted or promulgated by those whose

4

acts may fairly be said to represent official policy. As a result, the Board of Education (the proper defendant for the named District #299) and KIPP Ascend should be dismissed as defendants. As defendants point out, a local government cannot be held liable on a *respondeat superior* theory. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 659 (1978). Under *Monell*, Plaintiff must plausibly allege that an official custom or policy of the district or KIPP was the "moving force" behind the constitutional deprivations alleged. *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012); *see also White v. City of Chicago*, 829 F.3d 837, 839, 843–44 (7th Cir. 2016) (discussing what *Monell* requires at the pleading stage). A "custom or policy" can be established by showing: (1) an express policy; (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage; or (3) that the constitutional injury was caused by a person with final policymaking authority. *Teesdale*, 690 F.3d at 834.

Plaintiff has failed to respond to this argument, thereby waiving her right to do so, and she has not alleged anything that the court understands as an official policy of the Board of Education or KIPP. Accordingly, the Board and KIPP are dismissed as defendants from all of plaintiff's Section 1983 claims, Counts I, II and III. *See Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) ("[E]ven though a complaint may comply with the simple notice pleading requirements of Rule 8(a)(2), it may nonetheless be dismissed under Rule 12(b)(6) if the plaintiff does not present legal arguments supporting the 'substantive adequacy' or 'legal merit' of that complaint." (quoting *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999))), quoted *Discount Inn, Inc. v. City of Chicago*, 72 F. Supp. 3d 930, 933–34 (N.D. Ill. 2014) ("Plaintiff failed to respond to the City's arguments and support the legal adequacy of its claims, Counts 4, 5, 6, and 7 are considered abandoned and therefore are dismissed."); *Collopy v.*

*Dynamic Recovery Solutions, LLC*, 16 C 6777, 2017 WL 1321118, at *1 (N.D. Ill. Apr. 4, 2017) ("[B]ecause [the plaintiff] abandons her state law claim in her response to the motion to dismiss, the Court grants Defendants' motion to dismiss the ICFA claim.").

**B. Count I, II and III: 42 U.S.C. §1983—Failure to Provide Medical Care; Due Process-Deliberate Indifference; Due Process-State Created Danger**

The court deals with these three counts together, since only the theory stated in relation to Count III seems applicable to the facts alleged in the complaint, but that theory appears to have a chance of prevailing only with respect to the claim alleged in Count I (failure to provide medical care), not the claims alleged in Counts II and III, ostensibly addressed to KIPP's allegedly unsafe playground equipment (although only the complaint, not the briefs, focuses on the playground equipment in Counts II and III). The court must still wade into the quagmire created by the complaint and briefing, however, for "[a]n imperfect statement of a legal theory [in a complaint] is not grounds for dismissal" under Rule 12(b)(6). *Armstrong v. Krupiczowicz*, 874 F.3d 1004, 1009 (7th Cir. 2017) (citing *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014)). Down the rabbit hole we go.

1. <u>No "Special Relationship" Between School Officials and T.G. Alleged</u>

Plaintiff alleges in Count I that it was obvious to defendants that T.G. "had a serious medical condition and required immediate medical care." Compl. ¶ 32. Nevertheless, defendants failed to act, thereby "intentionally or recklessly" failing to provide T.G. with adequate medical care for her serious condition. Compl. ¶ 34. This, plaintiff alleges, amounted to "deliberate indifference." Compl. ¶ 35.

Defendants contend that the legal basis for this claim is the Eighth Amendment. Defs. Mot. to Dismiss ¶ 10, ECF No. 30. Count I never mentions the Eighth Amendment, *see* Compl. ¶ 31–36, and plaintiff denies that the Eighth Amendment is the basis for her claim. Rather,

plaintiff argues, the basis for her claim is substantive due process under the Fourteenth Amendment.[4] Resp. to Mot. to Dismiss 4–5, ECF No. 33.

To the extent plaintiff articulates a theory, and she fails to do so with much clarity, she references the "special relationship" theory of liability and argues that T.G. was "under the Defendant's [sic] supervision and custody." Resp. to Mot. to Dismiss 6. She relies for this theory on *J.O v. Alton Community Unit School*, 909 F.2d 267, 272 (7th Cir. 1990). *J.O.* involved a claim that a schoolteacher sexually molested several children. The *J.O.* plaintiffs claimed that the school defendants had a "special relationship" to the schoolchildren, imposing an affirmative duty to provide for their safety and prevent the child abuse that occurred. *Id.*

The Seventh Circuit rejected plaintiffs' claim, holding that "the government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises." *Id.* at 272. Further, the court observed that while it did not intend to limit the government's affirmative duties to prisoners and mental patients, the only groups as to which the Supreme Court has ever recognized such a duty, schoolchildren are not "in custody" in the way necessary to give rise to such a duty. *Id.* Why plaintiff relies on *J.O.* when it dooms her claim is unclear.

Besides *J.O.*, she cites primarily prisoner cases, which the Seventh Circuit in *J.O.* said were not analogous, 909 F.2d at 272–73, and she fails to argue why *J.O.* doesn't doom her claim.[5] She cites other cases, but all they do is note that the plaintiff did not raise a "special

---

[4] Plaintiff contends that defendants waived their right to argue against her Fourteenth Amendment Due Process claim by devoting their argument to the Eighth Amendment. Resp. to Mot. to Dismiss 6. This contention is risible. Count I does not mention the Due Process Clause in its body or heading. *See* Compl. 4–5. Defendants are trying to understand what plaintiff is claiming, as is the court. That they guessed wrong, given the ambiguity of the complaint, is hardly defendants' fault.

[5] Perhaps plaintiff has not thought through the consequences of her argument. In the case of prisoners, the state's obligation is to provide them with necessary medical care, meaning have sufficient doctors and provide the care free of charge. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Plaintiff does not appear to want the defendants to provide T.G. with medical care in this respect, and the idea that a school has to pay for a child's medical needs

7

relationship" argument. *See Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (noting that plaintiff did not advance the argument that the schoolchild was in the state's custody) and *Chigano v. City of Knoxville*, 529 F. App'x 753, 757 (6th Cir. 2013) ("Plaintiffs do not argue that M.C. was in the functional custody of the State"). Those fail to support her argument.

2. <u>The Complaint States a State-Created Danger Claim</u>

While plaintiff has failed to make a viable argument for the survival of Count I, the court believes that another argument, the argument plaintiff makes only in relation to Counts II and III, (claims that say they are based on KIPP's allegedly unsafe playground equipment, rather than on T.G.'s allegedly obvious injury) should be considered here. That argument, related to plaintiff's "special relationship" theory but not fully developed by plaintiff, is the theory that a state actor may be liable for exposing an individual to a "state-created danger."

The Seventh Circuit discussed this theory in *King ex rel. King v. East St. Louis School District 189*, 496 F.3d 812 (7th Cir. 2007). In *King*, plaintiff's minor daughter, Jerica, was a student at East St. Louis Senior High School who, on May 4, 2004, stayed late to talk with her guidance counselor and missed the school bus. *Id.* at 814–15. Jerica told the guidance counselor that she would need to call her mother, but did not request to use the phone and the counselor did not offer Jerica the use of his phone. *Id.* at 815. Jerica left the school and went to a public bus stop in front of the school, but she saw no bus coming. *Id.* She attempted to reenter the school to call her mother, but the school's doors were locked and a hall monitor, when told by Jerica that she wanted to reenter the school to call her mother, denied her entry, stating that reentry was against school policy. *Id.* Jerica then headed toward a MetroLink station where she was

---

borders on the ridiculous. She rather appears to want them to take steps to address T.G.'s injury, such as by calling for help.

8

abducted at gunpoint by two men and ultimately raped. *Id.* She was released the following morning. *Id.*

The Seventh Circuit articulated three elements of the state-created danger doctrine.

> First, . . . the state, by its affirmative acts, must create or increase a danger faced by an individual[; s]econd, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual (. . . the plaintiff must be the foreseeable victim of a defendant's acts in a tort sense)[; and t]hird, . . . the state's failure to protect the individual must shock the conscience.

*Id.* at 817–18 (citations and quotations omitted).

The plaintiff's case in *King* failed the third element: there was nothing conscience-shocking about the school's policy of refusing to allow unsupervised students to enter the building after hours. *Id.* at 818–19. "There is no indication that the policy adopted was deliberately indifferent to the safety of the students." *Id.* at 819. Rather, "[a]ny fault on the part of the school district in implementing such a policy was simple negligence in failing to account for all circumstances that may arise in which a student would seek to reenter the school." *Id.*

In *Paine v. Cason*, a mentally disturbed bipolar woman was released from a police station shortly before sunset in the neighborhood of the Robert Taylor Homes, an area of Chicago which then had a very high crime rate (the homes have since been demolished). 678 F.3d 500, 504 (7th Cir. 2012). She did not know where she was and wondered around, eventually being taken to an apartment and raped at knifepoint. *See id.* at 505–06. Trying to escape, she jumped out of a window and suffered serious permanent brain damage. *Id.* at 506.

"State actors," the court held, "who needlessly *create* risks of harm violate the due process clause by depriving persons of life, liberty, or property without process . . . ." *Id.* at 510. "The police may not create a danger, without justification, by arresting someone in a safe place and releasing her in a hazardous one while unable to protect herself . . . ." *Id.* at 511.

9

Insofar as plaintiff claims that defendants placed a crying and bleeding 10-year-old in excruciating pain in the school hallway, with no adult supervision, and no attempt to address her medical needs, the plaintiff has alleged enough to plead a state-created danger claim. Like releasing a person into a dangerous environment when that person cannot help herself, *see Paine*, 678 F.3d at 510–11, the defendants' conduct cannot be viewed at this point as inaction, because they allegedly examined T.G. and placed her in the hallway without aid or assistance; it was their affirmative choice of what to do with the injured T.G. (basically nothing) that is the gravamen of plaintiff's complaint. *Compare Stevens v. Umsted*, 131 F.3d 697, 705 (7th Cir. 1997) (no state-created danger theory of liability where state actors simply fail to act in the face of "suspicious circumstances"). The Seventh Circuit held in *Ross v. United States* that the state-created danger theory applied; the evidence showed "that the county had a policy of arbitrarily cutting off private sources of rescue without providing a meaningful alternative" to people in danger of drowning. 910 F.2d 1422, 1431 (7th Cir. 1990); *see also id.* at 1425 (describing policy and how it affected the case; *viz*, deputy sheriff's physically blocking divers who wanted to attempt a rescue). The suffering that T.G. was enduring and would endure was, according to the complaint, self-evident. Compl. ¶ 32. And school officials' placing and then abandoning a ten-year-old in a school hallway effectively cuts her off from other possible sources of rescue. Viewing the facts alleged in the complaint favorably to plaintiff, it is plausible that a ten-year-old child told by her principal or teacher to sit in the hall would do as she was told. She would not understand that she should call 911 herself (nor have the means to do so); she should not ask another adult in the school for help (that would undermine the principal's authority); and she should not leave the school to seek help herself, even if she could. Therefore placing her in the hallway in her obviously injured condition effectively is what created or increased much of the

harm she faced on account of her injury by cutting her off from other sources of possible rescue and limiting her options for helping herself. *See Paine*, 678 F.3d at 511; *Ross*, 910 F.3d at 1431; *Estate of Massey v. City of Phila.*, 118 F. Supp. 3d 679, 693 (E.D. Pa. 2015) (denying motion to dismiss state-created danger claim of estate of child who died of asthma attack where plaintiff adequately alleged "that school actors prevented [the child] from seeking medical attention and taking medication that she used to control her asthma, thereby creating a danger to [the child]"); *cf. L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 244–47 (3d Cir. 2016) (plaintiff who alleged that teacher released five-year-old to adult who did not produce identification and later assaulted child alleged state created danger claim). Those defendants, who were aware of T.G.'s condition and chose to abandon her, if such heedless conduct is proven, could be found to have acted in a conscience-shocking manner. And clearly, plaintiff's suffering (the extent to which her initial injury was exacerbated, if any, cannot be determined from the complaint) proximately resulted from defendants' failure to summon aid. There is a great deal here that plaintiff will have to prove, but she pleads enough to allege that T.G. was exposed to a state-created danger.

3. <u>The Condition of the Playground Does Not Plausibly Allege a State-Created Danger Claim</u>

With regard to plaintiff's claims based on her allegation that the playground equipment was unsafe and known by defendants to be unsafe, the court finds the complaint inadequate. The court can imagine no legal theory other than state-created danger that could apply here, and plaintiff's citation of prison cases and/or cases that rely entirely on state law adds little if anything to her argument. Since plaintiff has not alleged enough to state a claim that the state officials' conduct was conscience-shocking, the court will address only that requirement.

The only thing alleged in plaintiff's complaint that even arguably relates to this requirement are the allegations, stated on information and belief, that other children had been

11

previously hurt on the equipment. Compl. ¶¶ 41, 50. Given the critical importance of this element to stating a constitutional claim, the court finds plaintiff's vague allegation insufficient to make out a plausible claim of conscience-shocking behavior under either *Twombly*, *supra*, 550 U.S. at 555, or *Iqbal*, *supra*, 556 U.S. at 677–78. Without an allegation of conscience-shocking behavior, plaintiff has no due process claim, and a vague allegation of an unstated number of unspecified other injuries, stated on information and belief, fails the plausibility test. Without an allegation of conscience-shocking behavior, all plaintiff has is a negligence claim. This is insufficient.

**C. Qualified Immunity**

Oddly, defendants stealthily tuck their qualified immunity argument into a portion of their brief in support of their motion to dismiss under the title "Insufficient Facts to Plead Violation of Alleged Due Process Rights" and rely on only one case which has nothing in common with this one, *Spady v. Bethlehem Area School District*, 800 F.3d 633, 642 (3d Cir. 2015). Mot. to Dismiss 5–10, ECF No. 30. Plaintiff responded to this argument, ECF No. 33 at 14–15, yet in their reply brief, defendants do not mention qualified immunity.

Whether this is a waiver or just an example of sloppy briefing, the court cannot determine. Since defendants *mention* qualified immunity, it is perhaps not a waiver. Nevertheless, it is not the court's role to make the parties' arguments for them. *See, e.g.*, *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006) ("it is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel" (quoting *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003))); *Sommerfield v. City of Chicago*, 252 F.R.D. 407, 419 & n.9 (N.D. Ill. 2008) (Gottschall, J.) (collecting authority and applying this rule, refusing to conduct legal research for the parties, and finding that party

previously hurt on the equipment. Compl. ¶¶ 41, 50. Given the critical importance of this element to stating a constitutional claim, the court finds plaintiff's vague allegation insufficient to make out a plausible claim of conscience-shocking behavior under either *Twombly*, *supra*, 550 U.S. at 555, or *Iqbal*, *supra*, 556 U.S. at 677–78. Without an allegation of conscience-shocking behavior, plaintiff has no due process claim, and a vague allegation of an unstated number of unspecified other injuries, stated on information and belief, fails the plausibility test. Without an allegation of conscience-shocking behavior, all plaintiff has is a negligence claim. This is insufficient.

**C. Qualified Immunity**

Oddly, defendants stealthily tuck their qualified immunity argument into a portion of their brief in support of their motion to dismiss under the title "Insufficient Facts to Plead Violation of Alleged Due Process Rights" and rely on only one case which has nothing in common with this one, *Spady v. Bethlehem Area School District*, 800 F.3d 633, 642 (3d Cir. 2015). Mot. to Dismiss 5–10, ECF No. 30. Plaintiff responded to this argument, ECF No. 33 at 14–15, yet in their reply brief, defendants do not mention qualified immunity.

Whether this is a waiver or just an example of sloppy briefing, the court cannot determine. Since defendants *mention* qualified immunity, it is perhaps not a waiver. Nevertheless, it is not the court's role to make the parties' arguments for them. *See, e.g.*, *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006) ("it is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel" (quoting *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003))); *Sommerfield v. City of Chicago*, 252 F.R.D. 407, 419 & n.9 (N.D. Ill. 2008) (Gottschall, J.) (collecting authority and applying this rule, refusing to conduct legal research for the parties, and finding that party

forfeited perfunctory, undeveloped legal arguments made in briefing ).

If defendants wish to rely on qualified immunity, they need to make that clear and they need to provide a coherent argument. They may move to dismiss on qualified immunity grounds if, after reading this opinion (which hopefully does a somewhat better job than plaintiff at articulating the alleged constitutional violation at stake), they wish to raise that issue.

**D. Count IV: State Claim for "Negligence—Willful and Wanton"**

Defendants argue that a provision of the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-201, bars plaintiff's claim. That section provides that except as otherwise directed by statute, "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

Defendants' reliance on *Eilenfeldt v. United C.U.S.D. #304 Board of Education*, 30 F. Supp. 3d 780, 792 (C.D. Ill. 2014), is misplaced. While the *Eilenfeldt* court relied on a case involving (as did *Eilenfeldt*) actions of school officials allegedly encouraging the bullying of the plaintiff's minor son, plaintiff in *Eilenfeldt* failed to respond to defendants' arguments that the acts involved were policy determinations and exercises of discretion. *Id.* It was plaintiff's failure to respond, although given two opportunities to do so, that led the court to find that the Tort Immunity Act covered the alleged conduct. *See id.* at 791–92 (lamenting that plaintiff suggested no way to distinguish another bullying case, *Hascall v. Williams*, 996 N.E.2d 1168 (Ill. App. Ct. 2013)). Whether or not that result was correct, given whatever the complaints in those cases alleged the defendants did or did not do, that case does not establish that watching an injured ten-year old crying, bleeding and writhing in pain without doing anything is a policy decision and within defendants' discretion. *See id.* at 792 ("Defendants . . . must demonstrate

13

that the employees' acts or omissions leading to the alleged injuries are both policy determinations and exercises of discretion." (citing *Harinek v. 161 N. Clark St. Ltd. P'ship*, 692 N.E.2d 1177, 1181 (Ill. 1998)). Nor does it establish that if, as alleged, numerous students were injured in the same way as T.G. was, defendants had discretion to turn a blind eye and ignore an obvious danger. Discovery might show that defendants were acting in the exercise of their discretion, but defendants' reliance on *Eilenfeldt* does not. *See id.* at 785–86 (describing bullying incidents; no decisions about medical care; no affirmative acts cutting off child form sources of help).

Nor is the court persuaded that defendants were acting in the exercise of their discretion by defendants' description of their conduct, raised to an almost meaningless level of generality ("decisions on how to handle procedures at recess and how to address the healthcare needs of a student"). Mot. to Dismiss 10, ECF No. 30 (citing nothing besides the case just discussed). Whether defendants were acting in the exercise of their discretion will require a much more thorough exploration of the facts than the complaint provides.[6]

Defendants further argue that plaintiff improperly combines a negligence claim with a willful and wanton claim, which makes it difficult for defendants to plead the proper immunities. Mot. to Dismiss ¶ 24. Defendants request a more definite statement under Federal Rule of Civil Procedure 12(e), but they cite not a single case in support of their argument that the theories must be pleaded in separate counts, and reference a large number of undifferentiated statutes. *See id.* This is an inadequately developed argument which the court properly disregards. *See, e.g.*, *Davis v. Duckworth*, 107 F.3d 873, 1997 WL 58811, (7th Cir. 1997) (unpublished table decision). And the court does not see how defendants' ability to respond to the complaint is hampered in this

---

[6] The court ignores the language of the Act that provides an exemption for policy-making activities. Defendants argued that *Monell* requires dismissal of the Board and KIPP because plaintiff failed to allege a policy and the court agreed.

14

regard. *See Chapman v. Yellow Cab Cooperative*, 875 F.3d 846,849 (7th Cir. 2017) (stating that a motion for more definite statement "is the right way to ask plaintiffs to lay out details that enable the defendants to respond intelligently and the court to handle the litigation effectively" (citation omitted)). Plaintiff clearly charges all defendants with both negligent and willful and wanton conduct, based on the incorporation of all previous paragraphs of her complaint, and defendants should respond accordingly.

Finally, defendants argue that the Board is not subject to punitive damages whether with respect to plaintiff's §1983 claims or her pendent state law claims. *See* 745 Ill. Comp. Stat. 10/2-102 (stating that a local public entity is not liable to pay punitive damages "in any action arising out of an act or omission made by the public official while serving in an official . . . capacity"). Plaintiff concedes that this section bars the recovery of punitive damages against defendants KIPP and the Board, but not against the individual defendants. Resp. to Mot. to Dismiss 15, ECF No. 33. Defendants do not appear to disagree, but argue that because the complaint commingles the defendants within each count, the prayers for punitive damages in each count should be stricken. Reply 12, ECF No. 35.

The court sees no need for such a harsh result. The parties appear to agree that punitive damages are not available on either the federal or state claims against the Board and KIPP, which at this point remain defendants only to plaintiff's state law count (Count IV). This opinion establishes that as the law of the case, and no amendment is required. Nevertheless, given how badly plaintiff's complaint articulates any theories of relief which the court has found to be viable, an amendment would certainly help move this action forward, and getting rid of futile

claims for punitive damages against defendants who are not liable for such damages would be helpful as well.[7]

## IV. CONCLUSION

For the reasons stated, defendants' motion to dismiss, ECF No. 30, is granted in part and denied in part. The complaint's § 1983 claims (Counts I, II, and III) against the Board and KIPP are dismissed, and the § 1983 claims are dismissed against all defendants except insofar as plaintiff asserts a state-created danger claim, as more fully discussed in this opinion, based on defendants' placing T.G. in the hallway. Defendants may move for dismissal on qualified immunity grounds. If they choose to do so, the motion will be briefed as follows: the motion must be filed by and including 01/23/18; plaintiff's response is due by and including 02/06/18; and defendants' reply is due by and including 02/13/18. A status conference is set for 01/31/18 at 9: 30 a.m.

Date: January 9, 2018                             /s/
                                                  Joan B. Gottschall
                                                  United States District Judge

---

[7] Also, the school district and the defendant named as Corrinne Hall tell the court that they are misnamed in the complaint. *See* Mot. to Dismiss 1, ECF No. 30. Correcting this would be helpful as well.